IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.K., a minor, by and through his parents, T.K. and C.K., <br><br> Plaintiff, <br><br> v. <br><br> HAYWARD UNIFIED SCHOOL DISTRICT, et al., <br><br> Defendants. <br>_____/ <br> AND RELATED CROSS COMPLAINT <br>_____/ | No. C 06-07836 JSW <br><br> **ORDER RE ALAMEDA COUNTY BEHAVIOR HEALTH CARE SERVICES'S AND CALIFORNIA DEPARTMENT OF EDUCATION'S MOTIONS TO DISMISS** |

Now before the Court are the motions to dismiss filed by defendant Alameda County Behavior Health Care Services ("ACBHCS") and the California Department of Education ("CDE"). Having carefully reviewed the parties' papers, the relevant legal authority, and having had the benefit of oral argument, the Court hereby grants in part and reserves in part as to ACBHCS's and the CDE's motions.

**BACKGROUND**

In August 2005, the parents of plaintiff R.K., a minor, by and through his parents ("Plaintiff"), T.K. and C.K. ("Plaintiff's parents") and the Hayward Unified School District (the "District") entered into a settlement agreement resolving an administrative due process complaint pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and the California Education Code. (Compl., ¶ 29.) The Settlement Agreement

1  provided that the District would provide educational services to Plaintiff at the Esther B. Clark
2  school ("EBC"), a certified non-public school, during the 2005-2006 school year and extended
3  2006 school year. (*Id.*. ¶ 30.) The Settlement Agreement also provided, in pertinent part, that
4  Plaintiff's placement at EBC would include:

> ...
> Mental health services consisting of one one-hour individual therapy session and one one hour group therapy session weekly as well as one one-hour session of family therapy weekly for the first thirty (30) days of [Plaintiff]'s placement and reduced to one one-hour session ever two weekes. ...
> ...
> The District agrees to refer [Plaintiff] for an AB3632 Mental Health evaluation with Alameda County Mental Health ("Mental Health"). ...
> ...

(*Id.*)

On September 9, 2005, the District's Special Education Director referred Plaintiff to ACBHCS for mental health services pursuant to the Settlement Agreement. (*Id.*, ¶ 45.) On September 29, 2005, ACBHCS sent Plaintiff an assessment plan which noted that Plaintiff's assessment would consist of a review of records, an interview of Plaintiff and his parents, and behavior ratings or observations. ACBHCS failed to provide timely notice that it intended to conduct an assessment and of its assessment plan. (*Id.*, ¶ 46.)

On October 28, 2005, ACBHCS provided Plaintiff's parents with an eligibility statement. (*Id.*, ¶ 47.) Plaintiff alleges that

> [a]ttached to the Eligibility Statement were vague and ambiguous goals that, in light of Plaintiff's needs, were not designed to assist Plaintiff in benefitting from his education. Despite documenting trauma resulting from childhood experiences and stress related to ... police incidents, the recommendations were to simply continue with the EBC placement and services contained in the Agreement and [the District]'s responsibility.

(*Id.*) On November 17, 2005, Plaintiff's parents notified ACBHCS with their complaints regarding the eligibility statement. (*Id.*)

ACBHCS revised the eligibility statement two times, but Plaintiff's parents still found it inadequate and, thus, rejected the plan. (*Id.*, ¶¶ 48, 49.) Plaintiff alleges that ACBHCS "failed to comply with the mandated special education laws which require statements of Plaintiff's present levels of performance and functional goals that can achieve a measurable change." (*Id.*,

¶ 49.) Instead, ACBHCS's goals included "Reduce Aggressive Behavior ... [Plaintiff] will learn two alternative behaviors to replace inappropriate aggressive behaviors over the next six months." (*Id*.)

ACBHCS's eligibility statement attached a document informing Plaintiff of his right to a due process proceeding, and on December 23, 2005, Plaintiff's parents requested what they thought was such a proceeding. (*Id*., ¶ 50.) On January 4, 2006, ACBHCS notified Plaintiff's parent that a hearing date was set. Plaintiff and his parents did not realize that this was an internal grievance proceeding through the California Department of Social Services ("DSS"). (*Id*., ¶ 51.) In this proceeding, Plaintiff's parents raised their concerns related to the lack of services and support received by ACBHCS. (*Id*.) The grievance hearing was held on January 24, 2006. (*Id*., ¶ 54.) On March 8, 2006, ACBHCS notified Plaintiff's parents in writing to confirm the issues they raised at the hearing and to reject their request for additional services. (*Id*.) On March 16, 2006, Plaintiff's parent appealed ACBHCS's response to their grievance with a DSS hearing officer. The DDS hearing officer found that ACBHCS had provided appropriate services and that the purpose of eligibility assessment was to determine eligibility, not to be used as a "reference for clinical treatment planning or education planning." (*Id*., ¶¶ 55, 56.)

Beginning in February 2006, EBC indicated that it intended to exit Plaintiff and to stop providing him with educational services. (*Id*., ¶ 7.) On March 7, 2006, Plaintiff's parents filed another administrative due process complaint against defendants in the California Office of Administrative Hearings ("OAH"). (*Id*., ¶ 66.) In this complaint, Plaintiff's parents alleged that ACBHCS failed to provide appropriate mental health services. (*Id*., ¶ 67.) The due process complaint was dismissed "for failure to amend in the requisite 14 days provided by the [IDEA]." (*Id*., ¶ 71.) On August 16, 2006, Plaintiff's parent filed an amended due process complaint. (*Id*., ¶ 72.) On September 6, 2006, OAH issued a "stay put order" pursuant to 20 U.S.C. § 1415(j) directing the District to maintain Plaintiff's placement at EBC during the

1  pendency of the due process action.[1]  (*Id.*. ¶ 74.)  Plaintiff's parents retained counsel, and on

2  December 4, 2006, believing that the OAH did not have jurisdiction over the pending dispute,

3  filed a Notice of Withdrawal of the due process complaint.  (*Id.*, ¶ 75.)  Based on the Notice of

4  Withdrawal, the OAH dismissed the action.  (Declaration of Mandy Leigh in Support of Reply

5  re Plaintiff's Application for Temporary Restraining Order ("Leigh Decl."), Ex. D.)

### Allegations Specific to the CDE

On January 9, 2006, Plaintiff's parents sent a letter to Marsha Bedwell, general counsel for the CDE regarding EBC's alleged policy of only accepting students who had been referred for services by the District.  Plaintiff's parents argued that the District used this policy to force them, in bad faith, to sign the Settlement Agreement.  (*Id.*, ¶ 57.)

On January 10, 2006, Plaintiff's parents filed a complaint with the CDE, asserting that the District had been violating the Settlement Agreement by failing to timely hold individualized education plan ("IEP") meetings.  On March 15, 2006, the CDE found the District had been in compliance with the Settlement Agreement requirement to schedule IEP meetings every thirty days.  (*Id.*, ¶ 58.)  Plaintiff alleges that the CDE ignored evidence showing that the District provided notice to his parents at the last minute, thus impeding their ability to have their experts attend the IEP meetings.  Moreover, although the District sent out a notice for an IEP meeting in September 2005, the CDE failed to explain why this meeting did not occur.  (*Id.*)  Plaintiff's parents filed a request for reconsideration on March 15, 2006, but to date, have not received any response from the CDE.  (*Id.*, ¶ 59.)

On March 16, 2006, Plaintiff's parents filed a request for the CDE to investigate EBC's stated intention to keep Plaintiff out of school pending an investigation regarding Plaintiff's parents' complaints as to insufficient services.  (*Id.*, ¶ 60.)  The CDE issued a finding that EBC

---

[1] Section 1415(j) of the IDEA provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed."  *See* 20 U.S.C. § 1415(j).  This section "commonly referred to as the 'stay put' provision, requires the educational agency to maintain a child's educational program until any placement dispute between the agency and the child's parents is resolved."  *See Johnson ex rel Johnson v. Special Education Hearing Office*, 287 F.3d 1176, 1179 (9th Cir. 2002).

4

1  lacked teachers with appropriate credentials. (*Id.*) EBC then misused the CDE's decision and
2  informed the District that a CDE investigator had instructed EBC to exit Plaintiff at the end of
3  the 2006 extended school year. (*Id.*) Valarie Baugh ("Baugh"), on behalf of the District, wrote
4  a letter to Plaintiff's parents dated August 10, 2006, stating that Plaintiff was disenrolled from
5  EBC and that Plaintiff could not stay there. (*Id.*, ¶ 61.)

On September 1, 2006, the CDE contacted EBC and the District and notified them that
the letters purporting to disenroll Plaintiff were "incorrect and misleading." (*Id.*, ¶ 62.) On
September 7, 2006, CDE notified Plaintiff's parents that it was investigating EBC on the
following issues:

> 1. Failures of EBC to provide speech/language services as noted in the Agreement for the extended year 2006;
> 2. Failure of EBC to follow appropriate safety procedures regarding the events of July 26, 2006;
> 3. Failure of [EBC] to follow "stay put" provisions regarding student's rights to remain in the last IEP placement for the 2006-2007 school year.

(*Id.*, ¶ 63.)

On November 21, 2006, CDE issued a report regarding the first two issues above. (*Id.*)
The CDE found that EBC was not in compliance with the requirement to provide
speech/language services but that EBC had followed appropriate safety procedures. (*Id.*, ¶ 64.)
The CDE did not address the stay put issue in its report. (*Id.*)

On September 29, 2006, Plaintiff's parents filed a complaint with the CDE regarding
violations of the Settlement Agreement and the District's and EBC's failure to comply with the
OAH's stay put order. (*Id.*, ¶ 65.) CDE received this complaint on October 3, 2006. (Opp. to
CDE's Mot. at 2.) As noted above, Plaintiff withdrew his due process complaint before the
OAH on December 4, 2006, and based on the Notice of Withdrawal, the OAH dismissed the
action. (Compl., ¶ 75; Leigh Decl., Ex. D.) Plaintiff alleges that, to date, CDE has not acted to
enforce the stay put order. (*Id.*, ¶ 65.)

On December 21, 2006, Plaintiff filed an action in this Court. Against ACBHCS,
Plaintiff brings claims for Violation of Section 504 of the Rehabilitation Act of 1973 ("Section
504"), Violation of the Americans with Disabilities Act ("ADA"), California's Unruh Civil

5

1 Rights Act, and denial of a free and appropriate public education ("FAPE") required by the
2 IDEA.[2] Plaintiff also asserts claims under 42 U.S.C. §§ 1983 and 1985 against Carolyn
3 Novesel, in her official capacity as Director of ACBCHS. With respect to the CDE, Plaintiff
4 brings a claim for violation of Section 504 premised on the CDE's alleged failure to enforce
5 OAH's stay put order. Although Plaintiff's complaint does not make clear that his ADA claim
6 is against the CDE, Plaintiff does allege under this claim that the CDE's failure to enforce the
7 stay put order had a discriminatory impact on him. (*Id.*, ¶ 113.) Plaintiff also brings a claim
8 under the IDEA and California Education Code Section 56000 *et seq*. based on the CDE's
9 alleged failure to enforce the stay put order and "untimely reports that disregarded Plaintiff's
10 requests for ... assistance with compliance of the Agreement and Stay Put." (*Id.*, ¶ 140.) Lastly,
11 Plaintiff asserts a claim against the CDE under the Unruh Act.
12 ACBHCS and the CDE now move to dismiss Plaintiff's complaint.

**ANALYSIS**

**A.     Legal Standards on a Motion to Dismiss.**

When a defendant moves to dismiss a complaint or claim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim. *Thornhill Publ'n Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where an attack on jurisdiction is a "facial" attack on the allegations of the complaint, the factual allegations of the complaint are taken as true and the non-moving party is entitled to have those facts construed in the light most favorable to him or her. *Federation of African Amer. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). If the jurisdictional attack is "factual," a defendant may rely on

---

[2] Although Plaintiff labels his sixth claim as one for denial of FAPE under state law, namely California Government Code § 7570 *et seq.*, it is clear from Plaintiff's allegations that the obligation to provides a free and appropriate public education stems from the IDEA. (Compl., ¶ 128.) Moreover, upon review of the California statute, California Government Code § 7570 *et seq*. does not appear to provide for a private right of action. Accordingly, the Court construes Plaintiff's claim for denial of FAPE as one arising under the IDEA.

6

1 affidavits or other evidence that would be properly before the Court, and the non-moving party
2 is not entitled to any presumptions of truthfulness with respect to the allegations in the
3 complaint. Rather, he or she must come forward with evidence establishing jurisdiction.
4 *Thornhill*, 594 F.2d at 733.

5      A motion to dismiss is proper under Federal Rule of Civil Procedure Rule 12(b)(6)
6 ("Rule 12(b)(6)") where the pleadings fail to state a claim upon which relief can be granted.
7 Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the complaint is construed in the
8 light most favorable to the non-moving party and all material allegations in the complaint are
9 taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The court, however,
10 is not required to accept legal conclusions cast in the form of factual allegations if those
11 conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness*
12 *Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286
13 (1986)). Moreover, while as a general rule, "a district court may not consider any material
14 beyond the pleadings in ruling on a Rule 12(b)(6) motion," the Court may consider documents
15 attached to the complaint, documents relied upon but not attached to the complaint when the
16 authenticity of those documents is not questioned, and other matters of which the Court can take
17 judicial notice. *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other*
18 *grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted);
19 *see also Hal Roach Studios, Inc. v. Richmond & Feiner Co., Inc.*, 806 F.2d 1542, 1555 n.19 (9th
20 Cir. 1989).

21 **B.     ACBCHS's Motion.**
22     **1.     Failure to Exhaust.**

23 ACBCHS argues that Plaintiff's claims should be dismissed based on his failure to
24 exhaust administrative remedies by filing a due process complaint and completing the due
25 process procedures. Exhaustion is a jurisdictional requirement. *Blanchard v. Morton Sch.*
26 *Dist.*, 420 F.3d 918, 920-21 (9th Cir. 2005) ("If a plaintiff is required to exhaust administrative
27 remedies but fails to do so, the federal courts do not have jurisdiction to hear the plaintiff's
28 claim."). Moreover, the requirement to exhaust applies to any federal claim under which a

7

plaintiff is "seeking relief that is also available under the IDEA."[3] *Robb v. Bethel Sch. Dist.*, 308 F.3d 1047, 1049 (9th Cir. 2002) (quoting 20 U.S.C. § 1415(*l*)) (requiring exhaustion for claim under 42 U.S.C. § 1983); *see also Kutasi v. Las Virgenes Unif. Sch. Dist.*, 494 F.3d 1162, 1169 (9th Cir. 1997) (exhaustion required for claims under 42 U.S.C. § 1983 and Section 504 because all education issues underlying the plaintiffs' claims had not yet been fully resolved); *S.M.*, 2007 WL 108456, *4 (dismissing claims under IDEA, Section 504, ADA and 42 U.S.C. § 1983 for failure to exhaust); *Brown*, 2007 WL 202820, *4 (dismissing Section 504, ADA and 42 U.S.C. § 1983 claims).

The dispositive question in determining whether exhaustion is required for a particular claim "is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required." *Robb*, 308 F.3d at 1050. Here, Plaintiff contends that ACBHCS failed to provide him with appropriate mental health and behavior services and failed to adhere to requirements under the "special education laws" for providing such services. (Compl., ¶¶ 46-49.) Plaintiff's alleged injuries "could be redressed to some degree by the IDEA's administrative procedures and remedies." *Robb*, 308 F.3d at 1054. Accordingly, the exhaustion requirement applies to all of Plaintiffs' federal claims.

---

[3] ACBHCS argues that the exhaustion requirement applies to *all* of Plaintiff's claims, including his claim under the Unruh Act. Although Plaintiff does not object on this ground, the Court notes that the language of the IDEA restricts the exhaustion to requirement to claims arising under federal law. The IDEA provides, in pertinent part: "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 ... title V of the Rehabilitation Act of 1973 ..., or other *Federal laws* protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." *See* 20 U.S.C. § 1415(*l*) (emphasis added); *see also M.J. ex rel. G.J. v. Clovis Unif. Sch. Dist.*, 2007 WL 1033444, *12 (E.D. Cal. April 3, 2007) (finding that IDEA did not require exhaustion before Unruh Act claim could be filed). Many courts faced with this issue have dismissed federal claims based on failure to exhaust and then declined to exercise supplemental jurisdiction over the remaining state law claims. *See, e.g.*, *S.M. v. West Contra Costa Cnty Unif. Sch. Dist.*, 2007 WL 108456, *4 (N.D. Cal. Jan. 10, 2007); *Brown v. Napa Valley Unif. Sch. Dist.*, 2007 WL 202820, *4 (N.D. Cal. July 10, 2007); *Fraser v. Tamalpais Union High Sch. Dist.*, 2006 WL 1348427, *5 (N.D. Cal. May 17, 2006); *Payne v. Peninsula Sch. Dist.*, 2007 WL 128884, *4 (W.D. Wash. Jan. 12, 2007).

8

Plaintiff concedes that exhaustion is ordinarily required as a prerequisite to filing suit, and does not dispute that he did not seek a due process hearing with respect to his claims against ACBHCS or Ms. Novesel. (Opp. to ACBHCS's Mot. at 9.) Instead, Plaintiff proffers several arguments as to why the exhaustion requirement should be excused. First, he argues that he "effectively" exhausted by raising his concerns in a grievance hearing before the Department of Social Services because the issues presented and the contents of the proceeding were identical to what would have occurred in a due process hearing. (*Id.* at 13.) In support of this proposition, Plaintiff cites *Christopher S. v. Stanislaus County Office of Educ.,* 384 F.3d 1205, 1211 (9th Cir. 2004). Plaintiff's reliance on this case is misplaced. The court in *Christopher S.* explained that when a plaintiff brings a facial challenge to an invalid policy, exhaustion may not be required because "agency expertise and an administrative record are theoretically unnecessary in resolving the issue... ." *Id.* (quoting *Hoeft v. Tucson Unif. Sch. Dist.*, 967 F.2d 1298, 1305 (9th Cir. 1992)). Nevertheless, the Ninth Circuit held that another purpose of exhaustion would still be relevant, "namely, giving the state an opportunity to fix the allegedly unlawful policy." *Id.* (citing *Hoeft*, 967 F.2d at 1307); *see also Porter v. Bd. of Trustees of Manhattan Beach Unif. Sch. Dist.*, 307 F.3d 1064, 1073 (9th Cir. 2002) ("district courts may choose to require or to accept exhaustion of the [complaint resolution procedures] 'as a *substitute* for exhausting IDEA procedures in challenges to facially invalid policies.'") (emphasis in original) (quoting *Hoeft*, 967 F.2d at 1038). Here, Plaintiff is not bringing a facial challenge to an allegedly invalid policy but rather, is contesting the sufficiency of the IEP and the services provided to him. Therefore, these cases do not provide authority for considering alternative procedures as a substitute for exhaustion of the IDEA procedures.

Second, Plaintiff argues that he did not know the grievance procedure provided by the DSS did not qualify as a due process hearing. (Opp. to ACBHCS's Mot. at 13.) However, Plaintiff specifically alleges that ACBHCS notified him of his right to a due process proceeding. (Compl., ¶ 50.) Moreover, Plaintiff alleges that he did file a proper due process complaint that included his allegations against ACBHCS in March 2006. (*Id.*, ¶¶ 66, 67.) Plaintiff's own allegations demonstrate that he had knowledge of the due process procedures. Therefore, the

9

1  Court disregards any argument or declaration to the contrary as improper.  Finally, even if the
2  Court could consider Plaintiff's arguments that he did not know the grievance procedure did not
3  qualify as a due process hearing, Plaintiff does not provide, and the Court did not find, any
4  supporting authority for his proposition that ignorance of the requirements excuses compliance.

5  Third, Plaintiff contends that ACBHCS should be estopped from asserting that Plaintiff
6  failed to exhaust.  (Opp. to ACBHCS's Mot. at 15.)  "In general, estoppel may be invoked only
7  where a misrepresentation by one party is reasonably relied upon by a second party, who suffers
8  detriment as a result.  However, 'the Government may not be estopped on the same terms as any
9  other litigant.'"  *Purcell v. United States*, 1 F.3d 932, 939 (9th Cir. 1993) (quoting *Heckler v.*
10 *Community Health Servs.*, 467 U.S. 51, 60 (1984)).  To estop the government, a plaintiff must
11 demonstrate "affirmative conduct going beyond mere negligence" and "that the government's
12 act will cause a serious injustice and the imposition of estoppel will not unduly harm the public
13 interest."  *Purcell*, 1 F.3d at 939 (quoting *S & M Investment Co. v. Tahoe Regional Planning*
14 *Agency,* 911 F.2d 324, 329 (9th Cir. 1990)).  Notably, "[n]either the failure to inform an
15 individual of his or her legal rights nor the negligent provision of misinformation constitute
16 affirmative misconduct."  *See Socop-Gonzalez v. I.N.S.*, 208 F.3d 838, 843 (9th Cir. 2000)
17 (finding estoppel inapplicable where there was no evidence of a "deliberate lie" or "pattern of
18 false promises" sufficient to constitute affirmative misconduct); *see also Mukherjee v. I.N.S.,*
19 793 F.2d 1006, 1009 (9th Cir. 1986) (finding no affirmative misconduct where consular officer
20 failed to inform petitioner that his visa was approved and misinformed petitioner that he was not
21 subject to a two-year residency requirement).  Here, Plaintiff has not alleged, or presented any
22 evidence of, affirmative misconduct by ACBHCS.  Accordingly, ACBHCS may not be
23 estopped from arguing that Plaintiff is required to exhaust his administrative remedies.[4]

---

[4] Additionally, a party asserting estoppel against the government also demonstrate the following traditional elements of estoppel: "(1) [t]he party to be estopped must know the facts; (2) [h]e must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) [t]he latter must be ignorant of the true facts; and (4) [h]e must rely on the former's conduct to his injury." *Jaa v. United States Immigration and Naturalization Serv.*, 779 F.2d 569, 571-72 (9th Cir. 1986). Plaintiff's argument for estoppel also fails because he has not shown that ACBHCS knew that Plaintiff believed that the grievance hearing was the equivalent of the required due

10

1  Therefore, the Court grants ACBHCS's motion to dismiss Plaintiff's federal claims based on his
2  failure to exhaust.

### 2. Unruh Act Claim.

ACBHCS moves to dismiss Plaintiff's Unruh Act claim on the grounds that it is not a "business establishment," and thus, the Unruh Act does not apply to it. The Unruh Act prohibits "all business establishments of every kind whatsoever" from discriminating on the basis of disability. Cal. Civ. Code § 51(a). The Unruh Act prohibits discrimination "by a 'business establishment' in the course of furnishing goods, services or facilities to its clients, patrons or customers." *Alcorn v. Anbro Eng'g, Inc*., 2 Cal.3d 493, 500 (1970).

The California Supreme Court held that the term "business establishments" in the Unruh Act "was used in the broadest sense reasonably possible." *Burks v. Poppy Constr. Co.*, 57 Cal. 2d 463, 468 (1962). Several federal courts have concluded that school districts are "business establishments." *See, e.g.*, *Nicole M. v. Martinez Unif. Sch. Dist.,* 964 F. Supp. 1369, 1388 (N.D. Cal. 1997); *Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1581-82 (N.D. Cal. 1993); *Sullivan v. Vallejo City Unif. Sch. Dist.*, 731 F. Supp. 947, 952 (E.D. Cal. 1990). To determine whether or not an organization qualifies as a "business establishment" under the Unruh Act, courts consider the following nonexclusive factors:

> 1. what, if any, business benefits one may derive from membership; 2. the number and nature of paid staff; 3. whether the organization has physical facilities, and if so, whether those facilities are incidental to the purposes and programs of the organization; 4. what are the purposes and activities of the organization; 5. the extent to which the organization is open to the public; 6. whether there are any fees or dues for participation or membership, and if so, what percentage of those involved in the organization pay them; and 7. the nature of the organization's structure.

*Harris v. Mothers Against Drunk Driving*, 40 Cal. App. 4th 16, 20 (1995).

In light of the multi-factored test under which courts determine if an entity qualifies as a business establishment and considering that courts have found that school districts qualify, whether ACBHCS qualifies depends on facts that are not fully developed and that are not yet

---

process proceeding.

11

before the Court. Accordingly, the Court will not dismiss the Unruh Act claim on this basis at this procedural stage.

However, Plaintiff's Unruh Act claim appears to be insufficiently alleged for an another reason. To state a claim under the Unruh Act, a plaintiff must plead intentional discrimination in public accommodations in violation of the terms of the Act. *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1175 (1991). The Court may raise this issue *sua sponte*. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir.1987). However, before dismissing a claim *sua sponte* for failure to state a claim, the Court "must provide notice of its intention to dismiss and afford plaintiffs an opportunity to at least submit a written memorandum in opposition to such motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001) (internal quotes and citations omitted). Accordingly, the Court reserves ruling on ACBHCS's motion to dismiss as to Plaintiff's Unruh Act claim. Plaintiff may file a supplemental brief no longer than five pages by October 5, 2007 to address this issue. ACBHCS may file a responsive brief no longer than five pages by October 12, 2007.

**C.     CDE's Motion to Dismiss.**

All of Plaintiff's claims against the CDE, except for Plaintiff's claim under the IDEA and California Education Code §§ 56000, *et. seq.*, are entirely premised upon the CDE's alleged failure to enforce the withdrawn stay put order issued by OAH. Under his IDEA claim, Plaintiff also alleges that the CDE's reports regarding Plaintiff's complaints as to compliance with the Settlement Agreement were untimely.

   **1.     IDEA Claim.**

Plaintiff filed a complaint with CDE regarding the stay put order on September 29, 2006. (Compl., ¶ 65.) The CDE received the complaint on October 3, 2006. (Opp. to CDE's Mot. at 2.) Thus, pursuant to the federal regulations promulgated pursuant to the IDEA, the CDE's response was due within sixty days, by December 3, 2006. *See* 34 C.F.R. § 300.152. However, one day after this deadline had passed, Plaintiff withdrew his due process complaint before the OAH. (*Id.*, ¶ 75.) The OAH then dismiss the action based on Plaintiff's Notice of Withdrawal. (Leigh Decl., Ex. D.)

12

The CDE argues that because Plaintiff withdrew his due process complaint, the stay put order was essentially nullified. Thus, there was no longer any stay put order to enforce. The CDE contends that based on the facts alleged by Plaintiff, he has not stated a valid claim under the IDEA against the CDE. Plaintiff counters that the CDE's delay is a procedural violation that caused Plaintiff harm. Plaintiff argues that due to the CDE's failure to act within the sixty-day period, Plaintiff has been out of school for the past year and a half. (Opp. to CDE's Mot. at 2, 14.) But this injury was not caused by the CDE. The CDE's delay was only one day. One day after the CDE's response was due, Plaintiff withdrew his complaint, thus nullifying the stay put order he sought to enforce. Plaintiff argues that the CDE's report issued on November 21, 2006 was also issued passed the deadline. However, it is not clear whether Plaintiff can bring a claim against the CDE based on these procedural violations. *Compare Virginia Office of Protection and Advocacy v. Virginia Dept. of Ed.*, 262 F. Supp. 2d 648, 658 (E.D. Va. 2003) (finding IDEA does not provide a private right of action for violations of the complaint resolution procedures) *with Beth V. ex rel. Yvonne V. v. Carroll*, 87 F.3d 80, 88 (3d Cir. 1996) (finding IDEA provides a private right of action for violations of the complaint resolution procedures). Moreover, even if there is a private right of action, it is not clear what facts Plaintiff has alleged, or could allege, to show that he suffered any injury from the CDE's delay, as opposed to injury caused by the conduct of other defendants. Accordingly, the Court reserves ruling on the CDE's motion to dismiss as to Plaintiff's IDEA claim. Plaintiff may file a supplemental brief no longer than five pages by October 5, 2007 to address these issues. ACBHCS may file a responsive brief no longer than five pages by October 12, 2007.

**2.  Plaintiff's Section 504 and ADA Claims.**

Plaintiff alleges that CDE's alleged failure to enforce the OAH's stay put order violated Section 504 and the ADA. (Compl., ¶¶ 102, 113.)[5] CDE argues that Plaintiff's claims under

---

[5] It is not clear from Plaintiff's complaint that he intended to bring his ADA claim against the CDE because in the caption of that claim he states his ADA claim is against the District, ACBHCS, and the CHC. Plaintiff clarified in his opposition brief that his ADA claim is against the CDE as well. (Opp. to CDE's Mot. at 7.) Because, as Plaintiff himself acknowledges, the standards for stating claims under Section 504 and the ADA are substantially similar (*id*.), the Court finds that Plaintiff is not prejudiced by the CDE arguing

13

1  Section 504 and the ADA fail because he does not allege discrimination based on disability or
2  that he suffered any adverse action by CDE's slight delay.
3      In order to state a violation of Section 504, Plaintiff must allege that (1) he is disabled
4  within the meaning of Section 504; (2) he is otherwise qualified for the benefit or services
5  sought; (3) he was denied the benefit or services solely by reason of his disability; and (4) the
6  program providing the benefit or services receives federal financial assistance. *See Lovell v.
7  Chandler,* 303 F.3d 1039, 1052 (9th Cir. 2002). In order to state a claim under the ADA,
8  Plaintiff must make a prima facie showing that: (1) he is a qualified individual with a disability;
9  (2) he was excluded from participation in or otherwise discriminated against with regard to a
10 public entity's services, programs, or activities; and, (3) such discrimination was by reason of
11 his disability. *Id*.
12      To the extent that Section 504 and the ADA create essentially the same rights and
13 obligations, this Court will apply the same analysis to determine whether Plaintiff has stated a
14 claim for which relief can be granted under Section 504 and the ADA. *See Zukle v. Regents of
15 the University of California,* 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no significant
16 difference in the analysis of rights and obligations created by the ADA and the Rehabilitation
17 Act. . . . Thus, courts have applied the same analysis to claims brought under both statutes.")
18 (internal citations omitted). Thus, in order to plead a claim under either Section 504 or the
19 ADA, Plaintiff must allege (1) he is disabled under the Act; (2) he is "otherwise qualified;" (3)
20 he was denied benefits or services, or otherwise subject to discrimination, solely because of his
21 disability; and (4) CDE receives federal financial assistance (under Section 504), or is a public
22 entity (under the ADA). *See id.* at 1045.
23     In the special education context, a plaintiff must allege "that the educational decisions
24 relating to the student were so inappropriate as to constitute either bad faith or gross
25 misjudgment." *Alex G. ex rel. Dr. Steven G. v. Bd. of Trustees of Davis Joint Unif. Sch. Dist.*,
26 387 F. Supp. 2d 1119, 1124 (E.D. Cal. 2005); *see also N.L. v. Knox County Schs*., 315 F.3d 688,

28 in its reply brief that its argument with respect to Section 504 applies equally to the ADA. The Court thus denies Plaintiff's motion to strike the CDE's reply.

14

695-96 (6th Cir. 2003) ("To prove discrimination in the education context, courts have held that something more than a simple failure to provide a free appropriate public education must be shown."); *Sellers v. Sch. Bd.*, 141 F.3d 524, 529 (4th Cir. 1998); *Monahan v. Nebraska*, 687 F.2d 1164, 1170-71 (8th Cir. 1982); *Reid v. Petaluma Joint Union High Sch. Dist.*, 2000 WL 1229059, at *3 (N.D. Cal. 2000). Moreover, to the extent Plaintiff seeks money damages, Plaintiff is required, but failed, to allege intentional discrimination. *See Fegurson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998) (holding that compensatory damages are available under the ADA and the Rehabilitation Act for intentional discrimination).

Plaintiff argues that he sufficiently alleged discrimination because he alleges that he was purposefully excluded from school. (Opp. to CDE Mot. at 8.) However, Plaintiff has not alleged that he was excluded from school *solely because of his disability*. Plaintiff's reliance on this Court's order in *J.C. v. California Sch. for the Deaf*, 2006 WL 2850376, 33 NDLR P 169 (N.D. Cal. Oct. 5, 2006), is misplaced. In *J.C.*, the plaintiff specifically alleged that she had been discriminated against because she was autistic and cognitively impaired, in addition to being deaf. *Id.*, 2006 WL 2850376, *6. In contrast, here, Plaintiff does not allege that he was excluded from EBC because of his disability.

Even if such allegations were sufficient to allege discrimination on the basis of disability by some entity, Plaintiff does not allege that the *CDE* engaged in such exclusion. Rather, Plaintiff complains of CDE's one-day delay in completing its investigation and issuing a report regarding compliance with the OAH's stay put order. Plaintiff cites to *Emma C. v. Eastin*, 985 F. Supp. 940, 948 (N.D. Cal. 1997), for the proposition that a recipient of federal funds discriminates on the basis of disability when it perpetuates discrimination by providing assistance to another entity that in turn discriminates. (Opp. at 8-9.) However, as discussed above, Plaintiff has not alleged that any entity discriminated against him solely because of his disability. Absent sufficient allegations of any underlying discrimination, *Emma C.* is

15

inapplicable.[6]  Accordingly, the Court grants CDE's motion to dismiss Plaintiff's ADA and Section 504 claims against the CDE.

### 3. State-Law Claims.

The Eleventh Amendment bars claims in federal court against the state and its agencies based on state law violations. *Pennhurst St. Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984); *see also Air Transp. Ass'n v. Pub. Utils. Comm'n*, 833 F.2d 200, 204 (9th Cir. 1987). The CDE is a state agency. Therefore, Plaintiff's state-law claims against the CDE are barred by the Eleventh Amendment. Plaintiff's argument that the CDE is not immune because this Court may exercise supplemental jurisdiction over Plaintiff's state law claims is inapposite. Accordingly, the Court dismisses Plaintiff's state-law claims against the CDE.

## CONCLUSION

For the foregoing reasons, the Court grants in part and reserves in part as to the ACBHCS's and the CDE's motions to dismiss. The Court rules as follows:

(1) The Court dismisses Plaintiff's claims under Section 504, the ADA and the IDEA against ACBHCS and Plaintiff's claim under 42 U.S.C. sections 1983 and 1985 against Carolyn Novesel with prejudice.

(2) The Court reserves ruling on ACBHCS's motion to dismiss as to Plaintiff's Unruh Act claim. Plaintiff may file a supplemental brief in accordance with this order no longer than five pages by October 5, 2007. ACBHCS may file a responsive brief no longer than five pages by October 12, 2007.

(3) The Court dismisses Plaintiff's state-law claims against the CDE with prejudice.

(4) The Court reserves ruling on CDE's motion to dismiss as to Plaintiff's IDEA claim. Plaintiff may file a supplemental brief no longer than five pages by October 5, 2007 to

---

[6] Plaintiff also relies on an administrative ruling from the Office of Civil Rights ("OCR"). (Plaintiff's Request for Judicial Notice, Ex. A.). This ruling is not binding on this Court. Moreover, the Court finds the administrative ruling is not persuasive because it does not contain any analysis of the elements of a claim under Section 504, it was based on a settlement between the OCR and the CDE, and because it is factually distinguishable. The OCR was concerned with instances in which the CDE issued compliance reports finding that school districts had failed to comply with hearing orders but then did not act to ensure that its compliance reports were obeyed.

16

address this issue. The CDE may file a responsive brief no longer than five pages by October 12, 2007.

(5) The Court dismisses Plaintiff's Section 504 and ADA claim against the CDE without prejudice. Plaintiff will have leave to amend these claim after the Court resolves the outstanding issues with respect to the IDEA claim against the CDE and the Unruh Act claim against the ACBHCS.

**IT IS SO ORDERED.**

Dated: September 21, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

17