1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8                FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  R.K., a minor, by and through his parents, T.K.
   and C.K.,

10                                              No. C 06-07836 JSW

          Plaintiff,

11

   v.

12                                              **ORDER GRANTING THE**
                                                **HAYWARD UNIFIED SCHOOL**
   HAYWARD UNIFIED SCHOOL DISTRICT,             **DISTRICT'S AND THE**

13 et al.,                                      **CHILDREN'S HEALTH**
                                                **COUNCIL'S MOTIONS TO**

14        Defendants.                           **DISMISS**

15 _____/

16 AND RELATED CROSS COMPLAINT

   _____/

17

18        Now before the Court are the motions to dismiss filed by defendant Hayward Unified

19 School District ("the District") and Children's Health Council ("CHC").[1]  Having carefully

20 reviewed the parties' papers, the relevant legal authority, and having had the benefit of oral

21 argument, the Court hereby grants the District's and CHC's motions.

22                                **BACKGROUND**

23        Plaintiff R.K., a minor, by and through his parents ("Plaintiff"), T.K. and C.K.

24 ("Plaintiff's parents") brings this action against the District, CHC, Alameda County Behavior

25 Health Care Services ("ACBHCS"), and the California Department of Education ("CDE").

26 Plaintiff is a child eligible for services under the Individuals with Disabilities Education Act

27 ("IDEA"), 20 U.S.C. § 1400, *et seq.*, based on his classification as "Autistic Like."  (Compl., ¶

28

   _____

   [1] The Court grants Plaintiff's request for judicial notice.  *See* Fed. R. Evid. 201.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

8.)  During the 2002-2003 and 2003-2004 school years, Plaintiff attended a public elementary school within the District.  (*Id*., ¶ 11.)  In February 2003, Plaintiff's parents notified the District that they suspected that Plaintiff had Asperger's Syndrome, a form of autism.  (*Id*., ¶ 14.)  Around April 2003, the District developed a "Section 504 plan" and submitted a request for assessments in "academic, behavior, occupational therapy, speech, health and intellectual development."  (*Id*., ¶ 15.)  On April 14, 2003, Plaintiff was diagnosed with "Asperger's Disorder" and "ADHD."  (*Id*., ¶ 16.)  Plaintiff alleges that the District did not complete all the requested assessments and failed to provide Plaintiff all of the services he needed.  (*Id*., ¶¶ 15, 17-18.)

On September 11, 2003, on behalf of Plaintiff, Community Alliance for Special Education filed a request for a due process proceeding pursuant to the IDEA.  (*Id*., ¶ 19.)  On November 8, 2003, the District's speech therapist determined that Plaintiff had a disability that qualified him for assistance under the IDEA.  (*Id*., ¶ 21.)

During the 2003-2004 and 2004-2005 school years, the District convened individualized education plan ("IEP") meetings and monitored services provided to Plaintiff, but Plaintiff's parents were not satisfied with either.  (*Id*., ¶¶ 22-25.)  In September 2004, the District offered to Plaintiff's parents to place Plaintiff at a non-public school, but Plaintiff's parents did not believe it was an appropriate placement.  (*Id*., ¶ 26.)

On January 31, 2005, Plaintiff's parents initiated a due process complaint raising concerns with the 2002-2003, 2003-2004, and 2004-2005 school years and seeking a determination regarding Plaintiff's prospective placement.  (*Id*., ¶¶ 27-28.)

In August 2005, Plaintiff's parents and the District entered into a settlement agreement resolving the due process complaint.  (*Id*., ¶ 29.)  The Settlement Agreement was intended to "resolve any and all disputes, causes of action, and claims concerning [Plaintiff]'s special education and related services arising or occurring up to and through the start of the 2006-2007 school year."  (*Id*.)  The Settlement Agreement stated that the District would provide educational services to Plaintiff at the Esther B. Clark school ("EBC"), a certified non-public

1   school,[2] during the 2005-2006 school year and extended 2006 school year and that Plaintiff's

2   placement at EBC constituted a free and appropriate public education ("FAPE") for that year.

3   (*Id.* ¶ 30.)   The Agreement also provided, in pertinent part:

4
        ...
5       The parties release each other ... from any and all matters, claims, obligations, ...
        liabilities, ... and causes of action related to educational claims, including, but not
6       limited to, claims arising under the California Education Code, the Individuals
        with Disabilities Education Act, 42 U.S.C. Section 1983, the Americans with
7       Disabilities Act, the Unruh Act, and Section 504 of the Rehabilitation Act of
        1973, whether known or unknown ...[are] hereby released up to and through the
        start of the 2006-2007 school year.
8       ...
9       ... A breach of any portion of this Agreement shall be considered a breach of the
        whole Agreement.  Should either party breach any portion of this Agreement, the
        breaching party shall forfeit any and all consideration promised or received under
10      the terms of this Agreement.
        ...
11

12  (*Id.*, ¶ 30; Declaration of Jennifer Rowe in Support of [the District]'s and [Baugh]'s Motion to

13  Dismiss ("Rowe Decl."), Ex. 2.)

14          Plaintiff alleges that the District failed to comply with the Settlement Agreement by,

15  *inter alia*, failing to facilitate IEP meetings every thirty days and not allowing Plaintiff's

16  parents' expert attend the IEP meetings that did occur.  (Compl., ¶ 32.)  Beginning in February

17  2006, EBC indicated that it intended to exit Plaintiff and stop providing him with educational

18  services.  (*Id.*, ¶ 36.)  Plaintiff has not been in school since the end of the July 2006 extended

19  school year.  (*Id.*, ¶ 44.)

20          On March 7, 2006, Plaintiff's parents filed another administrative due process complaint

21  in the California Office of Administrative Hearings ("OAH").  (*Id.*, ¶ 66.)  The due process

22  complaint was dismissed "for failure to amend in the requisite 14 days provided by the

23  [IDEA]."  (*Id.*, ¶ 71.)  On August 16, 2006, Plaintiff's parents filed an amended due process

24  complaint.  (*Id.*, ¶ 72.)  Plaintiff alleges that his parents requested in the due process complaint a

25

26

27

28
    _____
        [2] EBC is owned and operated by CHC.  (Compl., ¶ 4.)

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  "stay put order" pursuant to 20 U.S.C. § 1415(j),[3] asserted that the District violated the

2  Settlement Agreement, and asserted that Plaintiff had not been provided appropriate mental

3  health services by ACBHCS.  (*Id.*, ¶ 67.)

4        On September 6, 2006, OAH issued a stay put order directing the District to maintain

5  Plaintiff's placement at EBC during the pendency of the due process action.  (*Id.*, ¶ 74.)  In

6  November, Plaintiff's parents retained counsel, and on December 4, 2006, believing that the

7  OAH did not have jurisdiction over the pending dispute, filed a Notice of Withdrawal of the due

8  process complaint.  (*Id.*, ¶ 75.)  Based on the Notice of Withdrawal, the OAH dismissed the

9  action.  (Declaration of Mandy Leigh in Support of Reply re Plaintiff's Application for

10  Temporary Restraining Order ("Leigh Decl."), Ex. D.)

11                     **Plaintiff's Claims Against the District**

12        On December 21, 2006, Plaintiff filed an action in this Court.  Plaintiff asserts the

13  following claims against the District: (1) injunctive relief based on the District's alleged failure

14  to comply with OAH's stay put order issued on September 6, 2006; (2) declaratory relief based

15  on alleged breaches of the Settlement Agreement; (3) violation of Section 504 of the

16  Rehabilitation Act ("Section 504") and Title II of the Americans with Disabilities Act ("ADA")

17  based on the District's alleged failure to follow the procedural requirements of the IEP process;

18  (4) violation of the Unruh Civil Rights Act, California Civil Code § 51 ("Unruh Act") based on

19  the District's alleged denial of special education instruction, services and access to an education

20  to Plaintiff; and (5) violation of the IDEA and California Education Code §§ 56000 *et seq.* for

21  failing to provide Plaintiff a FAPE.  Against Valarie Baugh ("Baugh"), the District's director of

22  special education, in her individual capacity, Plaintiff brings a claim for violation of 42 U.S.C.

23

24  _____

25        [3]  Section 1415(j) of the IDEA provides that "during the pendency of any proceedings
    conducted pursuant to this section, unless the State or local educational agency and the
26  parents otherwise agree, the child shall remain in the then-current educational placement of
    the child, or, if applying for initial admission to a public school, shall, with the consent of the
27  parents, be placed in the public school program until all such proceedings have been
    completed."  *See* 20 U.S.C. § 1415(j).  This section "commonly referred to as the 'stay put'
28  provision, requires the educational agency to maintain a child's educational program until
    any placement dispute between the agency and the child's parents is resolved."  *See Johnson
    ex rel Johnson v. Special Education Hearing Office*, 287 F.3d 1176, 1179 (9th Cir. 2002).

4

1    §§ 1983 and 1985 for failing to comply with the Settlement Agreement and by violating the

2    OAH's stay put order.

**Allegations Specific to the CHC**

4        On August 30, 2005, Plaintiff's parents committed to placing Plaintiff at EBC.  (Compl.,

5    ¶ 31.)  Jeanne Rayher, an EBC therapist, notified Maria Less, a licensed clinical social worker,

6    and ACBHCS that she believed Plaintiff did not suffer from Asperger's.  (*Id.*, ¶ 34.)  Plaintiff's

7    parents became concerned that Plaintiff would not be appropriately served by individuals, such

8    as an EBC therapist, who did not understand Plaintiff's disability.  (*Id.*)  Plaintiff's parents

9    asked EBC for the assistance of an Asperger's expert.  (*Id.*)  EBC failed to consider this request.

10   (*Id.*)

11       Beginning in February 2006, EBC indicated that it intended to exit Plaintiff.  (*Id.*, ¶ 36.)

12   Between February and April 2006, Plaintiff's teacher, assistant teacher, and behaviorist all left

13   EBC.  (*Id.*, ¶ 38.)  On May 5, 2006, an IEP meeting was held, but Plaintiff's regularly assigned

14   staff was not included in the meeting.  (*Id.*, ¶ 39.)  Moreover, a representative from another non-

15   public school, Keystone, attended the meeting because Keystone was being offered as an

16   alternative placement for Plaintiff.  Plaintiff's parents preferred that Plaintiff remain at EBC and

17   have EBC provide additional services to Plaintiff, rather than have Plaintiff moved to another

18   school.  (*Id.*)

19       On July 18, 2006, and then again on August 18, 2006, EBC unilaterally exited Plaintiff

20   from EBC.  (*Id.*, ¶ 41.)  Karen Breslow, EBC's interim director, wrote a letter to the District in

21   which she interpreted an order from the CDE as requiring EBC to "cease all services" to

22   Plaintiff.  (*Id.*)

23       On September 21, 2006, EBC, through its counsel, notified the OAH that it would only

24   abide by the stay put order if it were provided a new master contract at a higher rate and if the

25   District provided a ratio of one-to-one for an instructional aide.  (*Id.*, ¶ 43.)

**Plaintiff's Claims Against CHC**

27       Plaintiff asserts the following claims against CHC:  (1) injunctive relief based on CHC's

28   alleged failure to comply with OAH's stay put order issued on September 6, 2006; (2) violation

*United States District Court*
For the Northern District of California

5

1   of Section 504 and the ADA based on CHC's alleged failure to comply with the stay put order

2   and its unilateral decision to exit Plaintiff from EBC; (3) violation of the Unruh Act based on

3   CHC's alleged denial of special education instruction, services and access to an education for

4   Plaintiff; and (4) violation of 42 U.S.C. §§ 1983 and 1985 for unilaterally exiting Plaintiff from

5   EBC and violating the OAH's stay put order.

6                                    **Proceedings in this Action**

7          Plaintiff filed an Application for Temporary Restraining Order ("TRO") to enforce the

8   OAH's stay put order.  On January 22, 2007, the Court denied the application.  (Docket No. 26.)

9   Based on the OAH's dismissal of the due process action, the Court found that the stay put order

10  was no longer in effect, and, thus, held there was no order for this Court to enforce.

11         In his reply brief, Plaintiff also argued, for the first time, that this Court should issue an

12  original stay put order under the IDEA, because the statute authorizes such an order during "the

13  pendency of any proceedings conducted pursuant to [section 1415]."  *See* 20 U.S.C. § 1415(j).

14  The Court declined to issue a stay put order for the following three reasons: (1) Plaintiff

15  inappropriately moved for the first time for such requested relief in his reply brief; (2) Plaintiff

16  was required to, and failed to, first exhaust administrative procedures regarding the dispute as to

17  where Plaintiff should receive future educational services; and (3) the IDEA did not authorize

18  the Court to issue a stay put order based on the proceedings in this Court asserting breaches of

19  the Settlement Agreement.  Plaintiff appealed this Court's order denying the TRO, and the

20  Ninth Circuit affirmed.

21         The District and CHC now move to dismiss Plaintiff's complaint.

22                                          **ANALYSIS**

23  **A.     Legal Standards on a Motion to Dismiss.**

24         When a defendant moves to dismiss a complaint or claim for lack of subject matter

25  jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), the plaintiff

26  bears the burden of proving that the court has jurisdiction to decide the claim.  *Thornhill Publ'n*

27  *Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  A motion to dismiss for

28  lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial or factual."  *Safe Air for*

United States District Court
For the Northern District of California

6

1   *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where an attack on jurisdiction is a

2   "facial" attack on the allegations of the complaint, the factual allegations of the complaint are

3   taken as true and the non-moving party is entitled to have those facts construed in the light most

4   favorable to him or her.  *Federation of African Amer. Contractors v. City of Oakland*, 96 F.3d

5   1204, 1207 (9th Cir. 1996).  If the jurisdictional attack is "factual," a defendant may rely on

6   affidavits or other evidence that would be properly before the Court, and the non-moving party

7   is not entitled to any presumptions of truthfulness with respect to the allegations in the

8   complaint.  Rather, he or she must come forward with evidence establishing jurisdiction.

9   *Thornhill*, 594 F.2d at 733.

10          A motion to dismiss is proper under Federal Rule of Civil Procedure Rule 12(b)(6)

11  ("Rule 12(b)(6)") where the pleadings fail to state a claim upon which relief can be granted.

12  Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the complaint is construed in the

13  light most favorable to the non-moving party and all material allegations in the complaint are

14  taken to be true.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  The court, however,

15  is not required to accept legal conclusions cast in the form of factual allegations if those

16  conclusions cannot reasonably be drawn from the facts alleged.  *Clegg v. Cult Awareness*

17  *Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286

18  (1986)).  Moreover, while as a general rule, "a district court may not consider any material

19  beyond the pleadings in ruling on a Rule 12(b)(6) motion," the Court may consider documents

20  attached to the complaint, documents relied upon but not attached to the complaint when the

21  authenticity of those documents is not questioned, and other matters of which the Court can take

22  judicial notice.  *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other*

23  *grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted);

24  *see also Hal Roach Studios, Inc. v. Richmond & Feiner Co., Inc.*, 806 F.2d 1542, 1555 n.19 (9th

25  Cir. 1989).

26

27

28

United States District Court

For the Northern District of California

**B.      The District's Motion.**

     **1.      Claim for Injunctive Relief.**

     In count one of his complaint, Plaintiff seeks injunctive relief regarding the District's alleged failure to comply with the stay put order issued by the OAH on September 6, 2005. (Compl., ¶ 82.)  On December 4, 2006, Plaintiff withdrew his due process complaint.  (*Id.*, ¶ 75.)  Based on Plaintiff's Notice of Withdrawal, the OAH dismissed the action.  (Leigh Decl., Ex. D.)  This Court found that the stay put order was no longer in effect and, thus, held there was no order to enforce.  (Docket No. 26.)  The Ninth Circuit affirmed this Court's order.  The Court's ruling that the stay put order issued by the OAH on September 6, 2005 is no longer in effect and thus cannot be enforced is now the law of the case.  *See United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir 2007) ("The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case."); *United States v. Garcia-Beltran*, 443 F.3d 1126, 1129 (9th Cir. 2006) ("According to the law of the case doctrine, on remand a lower court is bound to follow the appellate court's decision as to issues decided explicitly or by necessary implication) (internal quotes and citation omitted).  Accordingly, the Court grants the District's motion to dismiss this claim.

     **2.      Jurisdictional Requirement to Exhaust Administrative Procedures.**

     The District argues that Plaintiff's claims should be dismissed based on his failure to exhaust the administrative remedies by filing a due process complaint and completing the due process procedures.  Exhaustion is a jurisdictional requirement.  *Blanchard v. Morton Sch. Dist.*, 420 F.3d 918, 920-21 (9th Cir. 2005) ("If a plaintiff is required to exhaust administrative remedies but fails to do so, the federal courts do not have jurisdiction to hear the plaintiff's claim.").  Moreover, the requirement to exhaust applies to any federal claim under which a plaintiff is "seeking relief that is also available under the IDEA."[4]  *Robb v. Bethel Sch. Dist.,*

---

     [4] The District argues that the exhaustion requirement applies to Plaintiff's state-law claims as well.  Although Plaintiff does not object on this ground, the Court notes that the language of the IDEA restricts the exhaustion to requirement to claims arising under federal law.  The IDEA provides, in pertinent part: "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 ... title V of the Rehabilitation Act of 1973 ..., or

**United States District Court**
For the Northern District of California

1   308 F.3d 1047, 1049 (9th Cir. 2002) (quoting 20 U.S.C. § 1415(*l*)) (requiring exhaustion for

2   claim under 42 U.S.C. § 1983); *see also Kutasi v. Las Virgenes Unif. Sch. Dist.*, 494 F.3d 1162,

3   1169 (9th Cir. 1997) (exhaustion required for claims under 42 U.S.C. § 1983 and Section 504

4   because all education issues underlying the plaintiffs' claims had not yet been fully resolved);

5   *S.M.*, 2007 WL 108456, *4 (dismissing claims under IDEA, Section 504, ADA and 42 U.S.C. §

6   1983 for failure to exhaust); *Brown*, 2007 WL 202820, *4 (dismissing Section 504, ADA and

7   42 U.S.C. § 1983 claims for failure to exhaust).

8           The dispositive question in determining whether exhaustion is required for a particular

9   claim "is whether the plaintiff has alleged injuries that could be redressed to any degree by the

10  IDEA's administrative procedures and remedies.  If so, exhaustion of those remedies is

11  required." *Robb*, 308 F.3d. at 1050.  Here, Plaintiff contends that the District failed to provide

12  him with a FAPE and conduct all of the required IEPs.  Plaintiff's alleged injuries "could be

13  redressed to some degree by the IDEA's administrative procedures and remedies." *Id.* at 1054.

14  Accordingly, the exhaustion requirement applies to all of Plaintiffs' federal claims.[5]

15          Plaintiff argues that exhaustion is not required because "he has already done so by

16  utilizing the compliance complaint process on numerous occasions."  (Opp. at 19.)  Although it

17  is not exactly clear as to what procedures he is referring, Plaintiff has not yet completed the

18  required due process proceedings.  Plaintiff initiated due process proceedings in 2005, but based

19  _____

20  other *Federal laws* protecting the rights of children with disabilities, except that before the
    filing of a civil action under such laws seeking relief that is also available under this

21  subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to
    the same extent as would be required had the action been brought under this subchapter."

22  *See* 20 U.S.C. § 1415(*l*) (emphasis added); *see also M.J. ex rel. G.J. v. Clovis Unif. Sch.*
    *Dist.*, 2007 WL 1033444, *12 (E.D. Cal. April 3, 2007) (finding that IDEA did not require

23  exhaustion before Unruh Act claim could be filed).  Many courts faced with this issue have
    dismissed federal claims based on failure to exhaust and then declined to exercise

24  supplemental jurisdiction over the remaining state law claims.  *See, e.g.*, *S.M. v. West Contra*
    *Costa Cnty Unif. Sch. Dist.*, 2007 WL 108456, *4 (N.D. Cal. Jan. 10, 2007); *Brown v. Napa*

25  *Valley Unif. Sch. Dist.*, 2007 WL 202820, *4 (N.D. Cal. July 10, 2007); *Fraser v. Tamalpais*
    *Union High Sch. Dist.*, 2006 WL 1348427, *5 (N.D. Cal. May 17, 2006); *Payne v. Peninsula*

26  *Sch. Dist.*, 2007 WL 128884, *4 (W.D. Wash. Jan. 12, 2007).

27          [5] Although the District does not argue that the exhaustion requirement applies to
    Plaintiff's claim concerning the Settlement Agreement, because, as discussed below, the

28  Court finds that this claim arises under federal law, the exhaustion requirement applies to this
    claim as well.

on the parties' Settlement Agreement reached through mediation, these proceedings ended before the administrative agency conducted an impartial due process hearing. Plaintiff initiated new due process proceedings in 2006, but then withdrew his complaint before the OAH conducted a due process hearing. On appeal of this Court's denial of the TRO, the Ninth Circuit affirmed this Court's holding that Plaintiff was required, but failed, to exhaust administrative remedies. Accordingly, this holding is now the law of the case. *See Thrasher*, 483 F.3d at 981; *Garcia-Beltran*, 443 F.3d at 1129.

To the extent Plaintiff is referring to the complaint he filed before the California Department of Education, such procedures are not a substitute for complying with the due process proceedings. *See Tyler B. v. San Antonio Elementary Sch. Dist.*, 253 F. Supp. 2d 1111, 1118 (N.D. Cal. 2003) ("The initiation of a state level review which did not proceed to a due process hearing is not literal exhaustion nor its equivalent"); *cf. Porter v. Board of Trustees of Manhattan Beach Unif. Sch. Dist.*, 307 F.3d 1064, 1073 (9th Cir. 2002) ("district courts may choose to require or to accept exhaustion of the CRP as a *substitute* for exhausting IDEA procedures in challenges to facially invalid policies") (emphasis in original) (internal quotes and citation omitted). Here, Plaintiff is not bring a facial challenge to an allegedly invalid policy but rather, is contesting the sufficiency of the IEP and the services provided to him. Therefore, *Porter* does not provide authority for considering alternative procedures as a substitute for exhaustion of the IDEA procedures. Accordingly, Plaintiff has not demonstrated that the requirement to exhaust is excused, and the Court thus grants the District's motion to dismiss Plaintiff's federal claims.

###### 3.     Settlement Agreement.

In Plaintiff's second claim entitled "Declaratory Relief," he seeks a judicial declaration of the parties' rights and obligations under the Settlement Agreement. The District argues that this claim is a state-law contract claim and that to the extent this claim covers conduct that occurred prior to the 2006-2007 school year, it is barred under Rule 12(b)(1) by the release in the Settlement Agreement. To the extent Plaintiff seeks redress for alleged breaches of the

**United States District Court**
For the Northern District of California

1   Settlement Agreement, the District urges this Court to decline to exercise supplemental

2   jurisdiction over this purported state-law claim.

3        Although the Court finds that the District's arguments are inapposite, the Court still

4   concludes that this claim should be dismissed for lack of jurisdiction.  First, Plaintiff's claim

5   addressing the Settlement Agreement arises under federal law.  Plaintiff's parents and the

6   District signed the Settlement Agreement pursuant to a mediation initiated after Plaintiff's

7   parents filed a due process complaint.  (Compl., ¶¶ 27-29.)  The IDEA provides that such

8   settlement agreements may be enforced in federal court.  *See* 20 U.S.C §§ 1415(e)(2)(F)(iii)

9   (providing that written agreements resolving due process complaints through the mediation

10  process are "enforceable in any State court of competent jurisdiction or in a district court of the

11  United States"), (f)(1)(B)(iii) (same regarding written settlement agreements reached during a

12  resolution session); *see also C.T. ex rel. D.T. v. Vacaville Unif. Sch. Dist.*, 2006 WL 2092613,

13  *6 (E.D. Cal. July 27, 2006) (finding that agreements made pursuant to section 1415(e)(2)(F)

14  may be enforced in federal court); *cf Traverse Bay Area Intermediate Sch. Dist.*, 2007 WL

15  2291352, *6-7 (W.D. Mich. July 27, 2007) (analyzing the significance of the 2004 amendments

16  to the IDEA providing that settlement agreements may be enforced in federal and state courts).

17  Moreover, the purpose of the Settlement Agreement was to resolve the parties' disputes

18  regarding Plaintiff's special education and related services.  (Rowe Decl., Ex. 2.)  The

19  Settlement Agreement incorporates terms specific to the IDEA, such as FAPE and IEP.  The

20  Court would have to refer to the IDEA to determine whether the parties complied with their

21  respective obligations under the Settlement Agreement.  *Cf. Hansson v. Norton*, 411 F.3d 231,

22  235 (D.C. Cir. 2005) (holding that "when a settlement agreement incorporates substantive

23  provisions of federal law such that enforcement of the agreement requires the interpretation and

24  application of federal law," a claim to enforce the settlement agreement arises under federal

25  law).  Therefore, the Court finds that Plaintiff's claim concerning the Settlement Agreement

26  arises under federal law.

27        Second, the District's argument that any claims based on conduct prior to the 2006-2007

28  school are barred by the release is reviewed by the Court under Rule 12(b)(6), not Rule

11

United States District Court

For the Northern District of California

12(b)(1).  *See Stephen H. v. West Contra Costa Cnty. Unif. Sch. Dist.*, 2007 WL 1557482, *1 (N.D. Cal. May 29, 2007) (holding that a release does not eliminate federal jurisdiction, but rather is merely an affirmative defense which is reviewed pursuant to Rule 12(b)(6)).  Plaintiff argues that based on the District's alleged breaches, the District has forfeited any consideration under the Settlement Agreement.[6]  At the hearing on this motion, the District responded to Plaintiff by arguing that all of the consideration is provided in paragraph 2 of the Settlement Agreement, which does not include the release.  Paragraph 2 is entitled "Actions to Resolve Dispute" and describes actions which the parties agreed to undertake.  (Rowe Decl., Ex. 2.) Paragraph 2 does not state that the consideration paid or received by the parties is limited to the provisions of this paragraph.  Under California law, consideration is defined as "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor... ."  *Melican v. Regents of Univ. of Calif.*, 151 Cal. App. 4th 168, 176-77 (2007) (quoting California Civil Code § 1605).  Based on this definition, the provision in the Settlement Agreement releasing claims qualifies as consideration.  Whether the parties in fact intended the release to be consideration and whether the release was forfeited by the alleged breaches are matters which this Court cannot resolve pursuant to Rule 12(b)(6) based on the Complaint and plain language of the Settlement Agreement.  Accordingly, the Court cannot dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) on this basis.

Nevertheless, the Court finds that Plaintiff's claim for breach of the Settlement Agreement should be dismissed for lack of subject matter jurisdiction based on Plaintiff's failure to exhaust the administrative procedures.  The Court's conclusion holds true for Plaintiff's alleged breaches of the Settlement Agreement, as well as for his allegations regarding conduct that occurred before the 2006-2007 school year.  The Settlement Agreement does not

---

[6] The Settlement Agreement provides, in pertinent part, that: "A breach of any portion of this Agreement shall be considered a breach of the whole Agreement.  Should either party breach any portion of this Agreement, the breaching party shall forfeit any and all consideration promised or received under the terms of this Agreement."  (Rowe Declaration, Ex. 2.)

1    constitute exhaustion.  Several other courts have considered this issue and held that exhaustion

2    is required for claims concerning breaches of agreements settling due process complaints,

3    especially where the alleged breach relates to the student's receipt of a FAPE.  *See e.g.*, *J.P. v.*

4    *Cherokee Cnty Bd. of Educ.*, 218 Fed. Appx. 911, 913-14 (11th Cir. 2007) (affirming court's

5    dismissal of claims for breach of settlement agreement for failure to exhaust where the alleged

6    injuries concerned provision of a FAPE); *Sarah Z. v. Menlo Park City Sch. Dist.*, 2007 WL

7    1574569, *6 (N.D. Cal. May 30, 2007) (finding court lacked jurisdiction to hear breach of

8    contract claim relating to plaintiff's special education services because claim was not exhausted

9    before administrative law judge); *Pedraza v. Alameda Unif. Sch. Dist.*, 2007 WL 949603, *6

10   (N.D. Cal. March 27, 2007) (holding that IDEA's exhaustion requirement is not satisfied when

11   parties enter into a mediated settlement agreement); *Banks ex rel. Banks v. Modesto City Schs.*

12   *Dist.*, WL 2233213, *9 (E.D. Cal. Sept. 9, 2005) (holding that settlement agreement, entered

13   into before a due process hearing had begun and not approved by an administrative law judge,

14   did not constitute exhaustion); *Steward v. Hillsboro Sch. Dist. No. 1J*, 2001 WL 34047100, *4

15   (D.Or. March 1, 2001) (holding that pursuant to the IDEA, claims for breach of contract must

16   first be presented to the appropriate administrative body).

17           As one court rejecting the contention that exhaustion would be excused reasoned:

18           Allowing the settlement in this case to constitute exhaustion would permit
             plaintiffs to proceed with their claims without developing a factual record,
19           allowing the educational system to exercise its expertise in resolving this conflict,
             or providing the parties a full opportunity to avoid excessive litigation in direct
20           contravention of Congress' intent behind the exhaustion requirement.

21   *S.A.S. ex rel. W.S. v. Hibbing Pub. Schs.*, 2005 WL 1593011, *3 (D. Minn. July 1, 2005).

22   Similarly, in *Steward*, the court noted that as a policy matter, claims for breach of contract

23   relating to IDEA issues, such as a failure to provide an IEP:

24           are best resolved in the first instance by someone familiar with the resources
             available to meet the needs of the disabled and the responsibilities of the district
25           to do so.  School systems and education departments should also be afforded the
             opportunity to correct their own errors before interference from the courts. ...
26           Failure to require exhaustion would encourage parties to circumvent
             administrative review by entering into, and then disregarding, settlement
27           agreements in order to go directly to federal court.

28   *Steward*, 2001 WL 34047100, *5.

13

**United States District Court**
For the Northern District of California

1    Here, it appears, based on the Complaint and the documents attached to the Rowe

2    Declaration, that the Settlement Agreement was entered into before a due process hearing had

3    begun and was not approved by the OAH.  Although Plaintiff initiated another due process

4    proceeding in 2006 in which it appears that he raised issues relating to the Settlement

5    Agreement, Plaintiff subsequently withdrew his complaint before the OAH conducted a due

6    process hearing.

7    In opposition to the District's motion, Plaintiff submitted an order from the OAH which

8    provides, in pertinent part:

9
10    [Plaintiff's complaint] mentions a settlement agreement from August 2005, but
      does not make clear whether Student is attempting to raise claims related to any
      period covered by the settlement agreement.  As noted above, OAH has limited
11    jurisdiction.  The jurisdiction of the OAH does not include a school district's
      alleged failure to comply with a settlement agreement. (*Wymer v. Manhattan
12    Beach Unif. Sch. Dist.* (9th Cir. 2000) 223 F.3d 1026, 1030).  Therefore, any claim
      as to the settlement agreement between the parties is outside the jurisdiction of the
13    OAH.

14    (Declaration of T.K. in Support of Plaintiff's Opposition to [the District]'s and [Baugh]'s

15    Motion to Dismiss, Ex. A.)  Given that Plaintiff subsequently withdrew the due process action

16    in which the OAH issued this order, it is not clear whether this interlocutory order remains

17    reviewable.  Nevertheless, to the extent it remains an order that this Court may consider, the

18    Court respectfully disagrees with the OAH's conclusion, based on *Wymer*, that it does not have

19    jurisdiction to review claims relating to the Settlement Agreement.  The issue before the court

20    in *Wymer* was whether the Special Education Hearing Office ("SEHO"), OAH's predecessor,

21    had jurisdiction to hear issues regarding compliance with a prior administrative order directing

22    compliance with a settlement agreement.  *Wymer*, 223 F.3d at 1027.  In that case, the parties

23    reached a settlement agreement and the SEHO hearing officer "ordered the parties to abide by

24    the terms of the settlement."  *Id*. at 1027.  The Court held that the SEHO did not have

25    jurisdiction to enforce its own order requiring compliance with the settlement agreement.  *Id*. at

26    1030; *see also Porter v. Bd. of Trustees of Manhattan Beach Unif. Sch. Dist.*, 307 F.3d 1064,

27    1069-1070 (9th Cir. 2002) (describing the *Wymer* court as holding "that the SEHO lacks

28    jurisdiction to enforce its own orders"); *C.T.*, 2006 WL 2092613, at *6 n.8 (distinguishing

United States District Court

For the Northern District of California

1   *Wyner* because in that case "a hearing officer actually issued *an order* requiring both parties to

2   comply with the settlement agreement") (emphasis in original).  In the absence of a final OAH

3   order regarding enforcement of the settlement, *Wymer* is not a jurisdictional bar to the OAH

4   hearing such claims.

5          Plaintiff's reliance on *C.T.* for the proposition that exhaustion would be futile is

6   misplaced.  In *C.T.*, despite that fact that the OAH had not issued an order requiring compliance

7   with the settlement agreement, the hearing officer held that the OAH lacked jurisdiction to

8   address the alleged breach of the settlement agreement.  2006 WL 2092613, at *6 n.8.  The

9   district court thus held that the plaintiff carried her burden to exhaust "to the extent possible in

10  the circumstances of [the] case."  *Id*. at *8.  However, *C.T.* is distinguishable.  In *C.T.*, the

11  administrative law judge addressed and fully resolved all the issues pending in the due process

12  proceeding.  In contrast, here, the order in which the OAH noted that, to the extent Plaintiff was

13  raising a claim as to the Settlement Agreement, the OAH lacked jurisdiction to hear such a

14  claim, was an interlocutory order in which Plaintiff was given leave until November 1, 2006, to

15  file an amended complaint.  The Court does not have the full administrative record before it, but

16  presumably, Plaintiff filed an amended complaint because on December 4, 2006, Plaintiff then

17  voluntarily withdrew his due process action.  (Compl., ¶ 75.)  Plaintiff thus short-circuited the

18  administrative process by withdrawing his complaint before the due process proceedings were

19  completed and all the issues were resolved.  *See Wooley v. Valley Center-Pauma Unif. Sch.*

20  *Dist.*, 2007 WL 2023525, *2 (S.D. Cal. Jan. 11, 2007) (finding exhaustion requirement was not

21  satisfied where plaintiff voluntarily withdrew due process complaint before the OAH fully

22  resolved all the issues before it).

23         Finally, the Court notes that subsequent to Plaintiff filing his complaint in this Court, the

24  District initiated an administrative due process proceeding.  Thus, the OAH is currently

25  considering aspects of Plaintiff's special education and services under the IDEA.  Addressing

26  whether the Settlement Agreement was breached before the current due process proceeding is

27  completed would be a piecemeal evaluation of the issues and would not be an efficient use of

28  judicial resources.  It is likely that issues currently before the OAH overlap significantly with

United States District Court

For the Northern District of California

1   issues this Court would have to evaluate in determining whether the Settlement Agreement was

2   breached.  Therefore, the Court holds that Plaintiff thus has not exhausted his claims relating to

3   the Settlement Agreement, nor demonstrated that requiring exhaustion would be futile.  The

4   Court agrees with the reasoning of the *J.P.*, *Sarah Z.*, *Pedraza*, *S.A.S.*, *Banks*, and *Steward* and

5   finds that exhaustion should be required.  *See e.g.*, *J.P.*, 218 Fed. Appx. at 913-14; *Sarah Z.*,

6   2007 WL 1574569, *6; *Pedraza*, 2007 WL 949603, *6; *S.A.S.*, 2005 WL 1593011, *3; *Banks*,

7   WL 2233213, *9; *Steward*, 2001 WL 34047100, *4.  Accordingly, this Court is without

8   jurisdiction to hear Plaintiff's claims relating to the Settlement Agreement and thus dismisses

9   those claims.

10   **4.      State-Law Claims.**

11   The Eleventh Amendment bars claims in federal court against the state and its agencies

12   based on state law violations.  *Pennhurst St. Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106

13   (1984); *see also Air Transp. Ass'n v. Pub. Utils. Comm'n*, 833 F.2d 200, 204 (9th Cir. 1987).

14   Although the District did not raise this issue, "Eleventh Amendment sovereign immunity limits

15   the jurisdiction of the federal courts and can be raised ... by the court sua sponte."  *In re

16   Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999).  School districts are state agencies for purposes

17   the Eleventh Amendment.  *Belanger v. Madera Unif. Sch. Dist.*, 963 F.2d 248, 251 (9th Cir.

18   1992); *see also Petersen v. Mt. Diablo Unif. Sch. Dist.*, 2004 WL 2980746, *5 (N.D. Cal. Dec.

19   20, 2004) (dismissing claims against school district as barred by Eleventh Amendment).

20   Accordingly, the Court dismisses Plaintiff's state-law claims against the District because they

21   are barred by the Eleventh Amendment.

22   **C.      CHC's Motion to Dismiss.**

23   As summarized by Plaintiff, the essence of his allegations against CHC are that CHC

24   excluded him from school by failing to comply with the stay put order, unilaterally exited

25   Plaintiff from EBC outside of the IEP process, and that CHC continues to engage in ongoing

26   retaliatory conduct toward him and his parents by unilaterally determining that EBC is not an

27   appropriate placement based on unlawful determinations.  (Opp. to CHC Mot. at 18.)

28

United States District Court
For the Northern District of California

1     **1.     Claim for Injunctive Relief.**

2          Plaintiff's claim for injunctive relief regarding CHC's alleged failure to comply with the

3     OAH's stay put order is dismissed for the same reasons the Court dismissed this claim against

4     the District, *i.e.*, the stay put order is no longer in effect and thus there is no order to enforce.

5     **2.     Jurisdictional Requirement to Exhaust Administrative Procedures.**

6          CHC argues that Plaintiff's claims fail based on his failure to exhaust his administrative

7     remedies.[7]  Plaintiff argues that his claims should not be dismissed for failure to exhaust

8     because the OAH does not have jurisdiction over CHC, and thus exhaustion would be futile.

9     CHC counters that although the OAH cannot force CHC to re-enroll Plaintiff at EBC because

10    the contract between CHC and the District has expired, the OAH can issue orders requiring the

11    District to provide Plaintiff with FAPE.  If EBC is the appropriate FAPE, CHC argues that the

12    OAH could order the District to place Plaintiff there.  (CHC's Reply at 3.)  Plaintiff has not

13    provided any authority demonstrating that the Court's authority over CHC is any broader than

14    the OAH's to issue an order requiring CHC to comply with the IDEA.  To the extent CHC is

15    subject to the IDEA, Plaintiff must first administratively exhaust his claims against CHC.  If

16    CHC is not subject to the IDEA, then Plaintiff's claims fail against CHC for failure to state a

17    claim.  Regardless, the Court finds it is appropriate to have the OAH make this determination in

18    the first instance.[8]

19

20          [7] As discussed above, the exhaustion requirement under the IDEA applies only to
      Plaintiff's federal claims.

21

22          [8] Notably, in an administrative ruling Plaintiff relies on, although the hearing officer
      found that the agency did not have jurisdiction over a private school, the hearing officer
      evaluated whether the private school was subject to and violated provisions of the IDEA, and
23    ordered the school district to take all necessary steps to implement the student's IEP at the
      private school.  *See Lodi Unif. Sch. Dist.*, 26 IDELR 1358, 26 LRP 4574 (Sept. 22, 1997).
24    Even if the OAH determines that it does not have jurisdiction over CHC, the Court finds it
      would be beneficial to provide the OAH an opportunity to engage in the type of analysis
25    conducted by the hearing officer in *Lodi*.  Exhaustion under the IDEA "allows for the
      exercise of discretion and educational expertise by state agencies, affords full exploration of
26    technical educational issues, furthers development of a factual record and promotes judicial
      efficiency by giving state and local agencies the first opportunity to correct shortcomings."
27    *Kutasi*, 494 F.3d at 1167; *see also Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 873
      F.2d 933, 935 (6th Cir.1989) (commenting of the importance of exhaustion: "Federal courts-
28    generalists with no expertise in the educational needs of [disabled] students-are given the
      benefit of expert factfinding by a state agency devoted to this very purpose. Such a

United States District Court

For the Northern District of California

1    Alternatively, to the extent the OAH does have jurisdiction over CHC, Plaintiff contends

2  that he already exhausted the administrative procedures to the extent possible.  However, as

3  discussed above, Plaintiff has not yet exhausted his claims through the administrative the due

4  process proceedings.  In light of the nature of Plaintiff's allegations, his complaints to the CDE

5  are not a substitute for complying with these due process proceedings.  *See Tyler B.*, 253 F.

6  Supp. 2d at 1118; *cf Porter*, 307 F.3d at 1073.  The exhaustion requirements apply despite

7  Plaintiff's characterization of his suit as one for monetary damages.  *See Robb*, 308 F.3d at 1048

8  (holding that plaintiff could not evade IDEA's exhaustion requirement by limiting a claim to

9  monetary damages); *see also Kutasi*, 494 F.3d at 1169 (requiring exhaustion regardless of type

10  of damages sought where all education issues underlying the plaintiffs' claims had not yet been

11  fully resolved).  The exhaustion requirement applies to all of Plaintiff's federal claims.

12  Accordingly, the Court grants CHC's motion to dismiss as to Plaintiff's federal claims.

13         **3.      Plaintiff's Section 504 and ADA Claims.**

14    CHC also argues that Plaintiff's claims under Section 504 and the ADA fail because he

15  does not allege discrimination based on disability.  In order to state a violation of Section 504,

16  Plaintiff must allege that (1) he is disabled within the meaning of Section 504; (2) he is

17  otherwise qualified for the benefit or services sought; (3) he was denied the benefit or services

18  solely by reason of his disability; and (4) the program providing the benefit or services receives

19  federal financial assistance.  *See Lovell v. Chandler,* 303 F.3d 1039, 1052 (9th Cir. 2002).  In

20  order to state a claim under the ADA, Plaintiff must make a prima facie showing that: (1) he is a

21  qualified individual with a disability; (2) he was excluded from participation in or otherwise

22  discriminated against with regard to a public entity's services, programs, or activities; and, (3)

23  such discrimination was by reason of his disability.  *Id.*

24

25  ──────────────

26  mechanism is necessary to give effect to a fundamental policy underlying the [Act]: that the
needs of [disabled] children are best accommodated by having the parents and the local

27  education agency work together to formulate an individualized plan for each [disabled]
child's education. ...Were federal courts to set themselves up as the initial arbiters of

28  [disabled] children's educational needs before the administrative process is used, they would
endanger not only the procedural but also the substantive purposes of the Act.") (internal
quotes and citation omitted).

1     To the extent that Section 504 and the ADA create essentially the same rights and

2     obligations, this Court will apply the same analysis to determine whether Plaintiff has stated a

3     claim for which relief can be granted under Section 504 and the ADA. *See Zukle v. Regents of*

4     *the University of California,* 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no significant

5     difference in the analysis of rights and obligations created by the ADA and the Rehabilitation

6     Act. . . . Thus, courts have applied the same analysis to claims brought under both statutes.")

7     (internal citations omitted).  Thus, in order to plead a claim under either Section 504 or the

8     ADA , Plaintiff must allege (1) he is disabled under the Act; (2) he is "otherwise qualified;" (3)

9     he was denied benefits or services, or otherwise subject to discrimination, solely because of his

10    disability; and (4) CHC receives federal financial assistance (under Section 504), or is a public

11    entity (under the ADA).  *See id.* at 1045.

12         In the special education context, a plaintiff must allege "that the educational decisions

13    relating to the student were so inappropriate as to constitute either bad faith or gross

14    misjudgment." *Alex G. ex rel. Dr. Steven G. v. Bd. of Trustees of Davis Joint Unif. Sch. Dist.*,

15    387 F. Supp. 2d 1119, 1124 (E.D. Cal. 2005); *see also N.L. v. Knox County Schs.*, 315 F.3d 688,

16    695-96 (6th Cir. 2003) ("To prove discrimination in the education context, courts have held that

17    something more than a simple failure to provide a free appropriate public education must be

18    shown."); *Sellers v. Sch. Bd.*, 141 F.3d 524, 529 (4th Cir. 1998); *Monahan v. Nebraska*, 687

19    F.2d 1164, 1170-71 (8th Cir. 1982); *Reid v. Petaluma Joint Union High Sch. Dist.*, 2000 WL

20    1229059, at *3 (N.D. Cal. 2000).  Moreover, to the extent Plaintiff seeks money damages,

21    Plaintiff is required, but failed, to allege intentional discrimination.  *See Fergurson v. City of*

22    *Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998) (holding that compensatory damages are available

23    under the ADA and the Rehabilitation Act for intentional discrimination).

24         Plaintiff argues that he sufficiently alleged discrimination because he alleges that he was

25    purposefully excluded from school.  (Opp. to CHC Mot. at 18.)  However, Plaintiff has not

26    alleged that he was excluded from school *solely because of his disability.*  Plaintiff's reliance on

27    this Court's order in *J.C. v. California Sch. for the Deaf*, 2006 WL 2850376, 33 NDLR P 169

28    (N.D. Cal. Oct. 5, 2006), is misplaced.  In *J.C.*, the plaintiff specifically alleged that she had

been discriminated against because she was autistic and cognitively impaired, in addition to being deaf. *Id.*, 2006 WL 2850376, *6. In contrast, here, Plaintiff does not allege that he was excluded from EBC because of his disability. Accordingly, the Court grants CHC's motion to dismiss Plaintiff's Section 504 and ADA claims for this independent reason.

### 4. Plaintiff's Unruh Act Claim.

CHC moves to dismiss Plaintiff's Unruh Act claim on the grounds that Plaintiff fails to allege discrimination based on his disability. (CHC Mot. at 10.) To state a claim under the Unruh Act, a plaintiff must plead intentional discrimination in public accommodations in violation of the terms of the Act. *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1175 (1991). Plaintiff responds by arguing that his allegations of purposeful exclusion from school are sufficient. (Opp to CHC Mot. at 17.) However, as discussed above, Plaintiff failed to allege that he was excluded *because of his disability*. Accordingly, the Court grant's CHC's motion to dismiss as to Plaintiff's Unruh Act claim.

### CONCLUSION

For the foregoing reasons, the Court GRANTS the District's and CHC's motion to dismiss. With the exception of Plaintiff's Unruh Act claim against CHC, the Court dismisses Plaintiff's claims against the District and CHC with prejudice. Plaintiff is provided leave to amend his Unruh Act claim against CHC. However, in the interests of judicial economy and efficiency, the Court *sua sponte* STAYS further proceedings in this case pending a resolution of the pending proceedings before the OAH.

**IT IS SO ORDERED.**

Dated: September 21, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

20